UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

PAULA A. WASHINGTON
o/b/o MPB,

        Plaintiff,

v.                                                    Case No.  1:10-cv-186-MP-GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Paula A. Washington, on behalf of her minor son, appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for childhood Supplemental Security Income ("SSI") disability benefits. (Doc. 1.) The Commissioner has answered (Doc. 9), and both parties have filed briefs outlining their respective positions. (Docs. 14 & 17.) For the reasons discussed below the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Paula A. Washington, on behalf of her son,[1] protectively filed an application for children's SSI benefits on October 10, 2006, alleging that Plaintiff became disabled on March 5, 2002, due to attention deficit hyperactivity disorder ("ADHD"). (R. 78, 98.) Plaintiff's application was denied initially and on reconsideration. (R. 45-48, 53-55.)

---

[1] Even though this action is being brought by the mother on behalf of her minor son, the Court will refer to the minor son as the Plaintiff.

Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") and the ALJ conducted a hearing on January 14, 2009. (R. 23-24.)

On April 21, 2009, the ALJ issued a decision finding that the Plaintiff was not disabled, and thus, not eligible for SSI payments. (R. 10-22.) The Appeals Council, on August 19, 2010, denied Plaintiff's Request for Review (R. 1-3), making the ALJ's hearing decision the final decision of the Commissioner.[2] On September 13, 2010, Plaintiff filed a timely appeal to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[3] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[4] In reviewing the Commissioner's decision, the district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5]

---

[2] See 20 C.F.R. § 416.1481 (2003).

[3] See 42 U.S.C. § 405(g) (2003).

[4] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401 (1971)); *accord*, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; *accord*, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

Congress has empowered the district court to affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause.[6] Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[7] The district court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[8] Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.[9]

The law considers a child disabled, for the purposes of children's SSI benefits, if that child has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[10] However, no child who "engages in substantial gainful activity . . . may be

---

[6] 42 U.S.C. § 405(g) (sentence four).

[7] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[8] Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[9] Bowen v. Heckler, 748 F.2d 629, 631, 636-37 (11th Cir. 1994).

[10] 42 U.S.C. § 1382c(a)(3)(C)(I) (2003).

*Case No. 1:10-cv-186-MP-GRJ*

considered to be disabled."[11] A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[12] The statute does not define "marked and severe functional limitations."

In determining the severity of impairments, the Commissioner must consider the combined effect and combined impact of all of the individual's impairments.[13] In determining the disability of a child, the Commissioner must make reasonable efforts to ensure that a qualified pediatrician or other specialist evaluates the case.[14]

The Commissioner has promulgated regulations governing eligibility for SSI benefits.[15] In accordance with Congressional intent, the regulations define "marked and severe functional limitations" as "a level of severity that meets, medically equals, or functionally equals the listings."[16]

The regulations set forth a three-part sequential test the Commissioner must follow when determining disability in children.[17] First, a child must show that the child is

---

[11] 42 U.S.C. § 1382c(a)(3)(C)(ii).

[12] 42 U.S.C. § 1382c(a)(3)(D).

[13] 42 U.S.C. § 1382c(a)(3)(G).

[14] 42 U.S.C. § 1382c(a)(3)(I).

[15] See 20 C.F.R. Pt. 416, Subpt I (2003); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

[16] 20 C.F.R. § 416.902 (2007).

[17] 20 C.F.R. § 416.924(a) (2007).

not performing substantial gainful activity.[18] Second, if the child is not working, the child must show that the child suffers from an impairment or combination of impairments that is severe.[19] Third, if there are severe impairments, the child must show that the child's impairments meet, medically equal, or functionally equal the severity of an impairment in the listings.[20] If the child does not meet all three criteria then the child is not disabled.

In addition to the three-part test, the Commissioner must find that the child's impairment meets the duration requirement, which means the impairment must be expected to result in death or to last longer than 12 months. If the child meets all three criteria and the duration requirement, then the child is disabled.[21]

Listing 112.11 for ADHD provides in pertinent part that for a child to meet the required level of severity for this listing, the child must show medically documented findings of all three of the following: (1) marked inattention, (2) marked impulsiveness, and (3) marked hyperactivity, and establish at least two of the following: (1) marked impairment in age-appropriate cognitive/communicative function; (2) marked impairment in age-appropriate social functioning; (3) marked impairment in age-appropriate personal functioning; or (4) marked difficulties in maintaining concentration, persistence, or pace.[22]

---

[18] 20 C.F.R. § 416.924(b).

[19] 20 C.F.R. § 416.924(c).

[20] 20 C.F.R. § 416.924(d).

[21] 20 C.F.R. § 416.924(d)(1).

[22] 20 C.F.R., Part 404, Subpart P, Appendix 1, Listing 112.11.

Provisions for determining functional equivalence are established under 20 C.F.R. § 416.926a. Stated generally, to functionally equal a listed impairment, a child must demonstrate an "extreme" limitation in one domain of functioning, or show a "marked" limitation in two domains of functioning.[23] There are six domains of functioning to be considered: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.[24] A "marked" limitation in a domain means that the child's impairment "interferes seriously with [their] ability to independently initiate, sustain, or complete activities."[25] An "extreme" limitation in a domain means that the child's impairment "interferes very seriously with [their] ability to independently initiate, sustain, or complete activities."[26]

### III. SUMMARY OF THE RECORD

#### A. *Record Related to Attention Deficit Hyperactivity Disorder (ADHD)*

Plaintiff underwent an evaluation for ADHD in March 2002, at the age of six. (R. 154, 217-222.) Testing showed symptoms of ADHD, and it was recommended that Plaintiff receive behavior management and in the future might also need medication to manage his ADHD. (R. 162, 217-222.) In December 2002, Plaintiff returned for follow-up at the Shands ADHD Pediatric Clinic, showing some behavioral problems. (R. 164.)

---

[23] 20 C.F.R. § 416.926a(a)

[24] 20 C.F.R. § 416.926a(b)(1).

[25] 20 C.F.R. § 416.926a(e)(2).

[26] 20 C.F.R. § 416.926a(e)(3).

When Plaintiff returned in February 2003, ongoing behavioral problems were noted; Plaintiff was involved with the behavioral teacher.  Plaintiff's impairment was rated as mild to moderate in severity and medication was recommended in the "very near future."  (R. 166-167.)

During the 2005-2006 school year, Plaintiff received approximately three disciplinary reports at school, two for "other violations-minor" (R. 232) and one for slapping another child in retaliation and then yelling and ignoring a staff leader's request to sit down.  The staff member completing the report noted that after school incidents such as this were not uncommon and that Plaintiff was disrespectful, raised his voice, and did not listen to staff members.  (R. 185.)

Plaintiff returned to the Shands ADHD Clinic in September 2006. He had been on various medication trials and was currently taking Focalin XR 10 mg daily and had been taking that dose for two to three years.  Plaintiff was off medications during the summer but experienced difficulties while at the YMCA.  On general exam, Plaintiff was alert, active, and engaged in conversation easily.  He was overly active and could not sit still but was compliant with his mother's and the physician's directives.  Plaintiff's Focalin dosage was increased, and his mother was instructed to call the clinic if the medication change did not improve his behavior.  (R. 168-169.)

An October 2006 form completed by Plaintiff's mother indicated that Plaintiff could make friends his own age, make new friends, and generally get along with teachers but did not generally get along with her or other adults.  (R. 90.)

In November 2006, Plaintiff's teacher, David Jarsicus, completed a form indicating that Plaintiff had problems in the domain of interacting and relating with others. Specifically, Mr. Jarsicus noted an obvious problem with seeking attention appropriately and slight problems with following rules and respecting authority. Mr. Jarsicus wrote that Plaintiff is often put in time-out in resource class but that Plaintiff "removes himself to a quiet area when he is being disruptive. He recognizes mistakes." (R. 116.)

The record includes a Childhood Disability Evaluation Form dated December 5, 2006. The evaluator, Claire Huisentrui, Psy.D., found that Plaintiff's impairment was severe but did not meet, medically equal, or functionally equal the listing. Dr. Huisentrui noted less than marked limitations in the domain of attending and completing tasks and no limitations in the remaining domains. (R. 173-178.)

On Plaintiff's mid-year report card for fifth grade (2006-2007 school year), he made As, Bs, and Cs. Two of his teachers complained about disruptive behavior; one noted that he works well in small groups. (R. 142.) During the 2006-2007 school year, Plaintiff received approximately three disciplinary reports for classroom disruption and defiance. (R. 186-187; 231-232.)

Plaintiff followed up at the ADHD Clinic December 2006, where it was noted that he was doing fairly well and denied any outbursts. His ADHD was "doing well" and he was continued on Focalin XR 15 mg daily. (R. 246.) In March 2007, Plaintiff returned to the ADHD Clinic, where his mother reported that he was improving but still had occasional behavior difficulties, though she thought the medication was effective in

controlling Plaintiff's hyperactivity and impulsive behavior. Plaintiff was alert, active, and happy upon physical examination and engaged in conversation easily. It was noted that he was doing "fairly well" on the Focalin XR 15 mg daily, and plaintiff's mother was advised to contact the clinic if his behavior worsened. (R. 245.)

A Childhood Disability Evaluation Form was completed on March 23, 2007 by Janice H. Miller, Ph.D., who opined that Plaintiff's impairment was severe but did not meet, medically equal or functionally equal the listing. Dr. Miller noted marked limitations in attending and completing tasks but no limitations in acquiring and using information, interacting and relating with others, and caring for yourself. Dr. Miller noted that Plaintiff was poorly organized and had difficulty remaining on task but he related well to others. (R. 179-184.)

During the summer of 2007, Plaintiff went off his medication and attended camp at the YMCA, where he received three behavior referrals and two parent letters. The problems were related to fighting with other campers, being disrespectful to staff, and speaking inappropriately to staff and campers. (R. 188-190, 207-208.) Plaintiff presented to the ADHD Clinic in August 2007, when it was noted that he had been off his medication since the beginning of the summer. Plaintiff denied behavior problems but admitted to being hyper since being off medication. His ADHD was "doing well" and his medications were restarted. (R. 243.)

Plaintiff returned to the ADHD clinic in November 2007, reporting problems with attention and talking in class but making As, Bs, and Cs. Plaintiff did not want to continue medication and was argumentative when discussing the issue, including

verbal outbursts and talking back to his mother.  It was recommended he continue Focalin XR 15 mg every morning.  (R. 241-242.)

In February 2008, Plaintiff presented to Shands, where he reported getting into trouble for talking at inappropriate times but his oppositional and argumentative attitude was improving.  He was maintained on Focalin XR 15.  (R. 239-240.)  Plaintiff's Spring 2008 FCAT scores indicate he was in the 74th national percentile in reading comprehension and the 82nd percentile in mathematics problem solving.  (R. 209.)

Disciplinary records show that during the 2007-2008 school year, Plaintiff received approximately six behavior referrals and two misconduct reports.  (R. 196-206, 231-233.) The referrals were for being defiant, talking back to his teacher and disrupting class (R. 201); getting four time-outs (R. 202); inappropriate computer use (R. 203); being loud and confrontational with other students and subsequently ignoring a teacher's instructions (R. 204); play fighting (R. 205); and being off task, talking with friends, and throwing a broken pencil across the room at a friend (R. 206.)  The misconduct reports were for not following directions, disrupting class, and using offensive language.  (R. 196-197.)

In July 2008, Plaintiff returned to the ADHD Clinic at UF.  He was taking Focalin XR 15 mg daily on school days but no longer wanted to be on medication because he was embarrassed about taking medication at school.  Plaintiff's mother complained of behavioral problems at school and at the YMCA.  They agreed to a 4-week trial with no medications and to followup at the clinic.  (R. 237.)

B. *Hearing Testimony*

Plaintiff was a 12-year old child at the time of the January 2009 hearing. (R. 28.) At the hearing, Plaintiff's mother, Paula Washington, testified that Plaintiff was in the seventh grade at Howard W. Bishop Middle School and participates in the gifted program. Plaintiff has been in the gifted program since the fourth grade. Plaintiff's mother testified that his teachers told her he cannot stay on task at all, moves around, has to be told several times to stay on task, and is easily distracted by his peers. (R. 29.) She testified that Plaintiff is verbally disrespectful toward adults at school and "can be very rude and indifferent to what they have to say at all." Plaintiff has had approximately four in-school suspensions since beginning middle school. For example, Plaintiff went on an inappropriate website; he pulled a classmate's pants down; and he threw a pencil across the room. (R. 30.) Plaintiff's mother told the ALJ that Plaintiff also talked back to teachers and tried to control the classes.

Outside of the classroom, Plaintiff could be disrespectful to his mother and his grandparents and is "rough" on his younger brother. For example, Plaintiff likes to push his little brother and call him names, especially when Plaintiff has friends over. Plaintiff's mother testified that Plaintiff got along fine with his friends outside of school and had "no problem with that." (R. 31.) On the bus, Plaintiff sometimes had issues with the bus driver. When Plaintiff pulled his classmate's pants down, he was not taking medication, but he was on medication when the other incidents happened. Plaintiff takes Vyanse to help him focus and stay on task. Prior to that, he took Focalin. (R. 32.) Plaintiff's mother testified that the Focalin did not really help. Plaintiff takes the

Vyanse in the morning before school and his grandparents make sure he takes the medication. (R. 33.) Plaintiff experiences loss of appetite and tiredness during the day as side effects of the Vyanse. (R. 34.) Plaintiff's mother testified that he was doing fine with his grades but was disrespectful to teachers. Plaintiff got along fine with family and attends church every Sunday, though he talks a lot. (R. 35.)

Plaintiff testified that he was in the gifted program at school and his favorite subject was language arts. His least favorite part of school was the weekly math test. (R. 37.) Plaintiff testified that he liked to play football during PE class, and he used to ride a bike. (R. 38.) Plaintiff testified that he has friends at school that he got along with "good" and also got along with them his teachers. (R. 39.) After school, Plaintiff would usually eat a snack, go on the computer to think about his homework, and then complete his homework. Plaintiff testified that he got along with his grandparents and liked living with them, but his little brother was sometimes annoying when Plaintiff had friends over. Plaintiff said he was responsible for taking care of himself and picking up his clothes but did not have assigned chores. He said that he sometimes played games online. (R. 41.)

When questioned by his representative, Plaintiff testified that he does not have problems with his teachers anymore but did when he was off his medicine because he was being disruptive and talking back. Plaintiff did not recall having problems with his teachers when he was on his medication. (R. 42.)

### C. *Findings of the ALJ*

In his decision, the ALJ determined that Plaintiff had not engaged in substantial gainful activity and suffered from a severe impairment, ADHD (R. 13.) The ALJ then found that Plaintiff's impairment did not meet, medically equal, or functionally equal the criteria for any listed impairment. Id.  In concluding that Plaintiff's impairment did not functionally equal any listing, the ALJ found that Plaintiff had no limitations in the domain of acquiring and using information; marked limitations in the domain of attending and completing tasks; less than marked limitations in the domain of interacting and relating with others; no limitations in the domain of moving about and manipulating objects; no limitations in the domain of caring for himself; and no limitations in the domain of health and physical well-being.  (R. 15-21.)  Accordingly, based upon the ALJ's evaluation of these factors, he concluded that Plaintiff was not disabled.

### IV.  DISCUSSION

Plaintiff contends that the ALJ erred by not finding that he had marked limitations in the domain of interacting and relating with others.  Plaintiff points to his mother's testimony at the January 2009 hearing and disciplinary records as demonstrative of Plaintiff's marked difficulties in the domain of interacting and relating with others.  (Doc. 14.)  Plaintiff's mother testified that he is disrespectful toward all adults and does not like to share.  She also testified that Plaintiff received an average of four or more in-school suspensions since starting middle school due to inappropriate behavior and talking back to teachers.  Plaintiff's mother testified that at home he was also

disrespectful to her and her parents, and was rough on his little brother. (R. 30-32.) Plaintiff also points to evidence of disciplinary reports in the record–at both the YMCA summer camp and in school–as demonstrative of a marked limitation in interacting and relating with others. Plaintiff was disciplined for disrupting class, being disrespectful, arguing with both adults and peers. (Doc. 14; R. 141, 188-189, 196-197, 201, 202-208, 234-236.)

In finding that Plaintiff had less than marked limitations in the domain of interacting and relating with others, the ALJ noted that state agency psychologists, Dr. Huisentruit and Dr. Miller, opined that Plaintiff had no limitations in this domain. (R. 173-184.) However, the ALJ also noted that these findings contrasted with the school and YMCA discipline referrals as well as the teacher questionnaire where Mr. Jarsicus remarked that Plaintiff had mostly slight or no problems with interacting and relating with others but did have an obvious problem in seeking attention appropriately. (R. 116.) The ALJ also considered Plaintiff's September 2006 visit to the Shands ADHD Clinic with Dr. Siddiqi, who found Plaintiff to be compliant and easily engaged in conversation. (R. 168-169.) The ALJ noted that Plaintiff's mother stated in an October 2006 form that Plaintiff had friends his own age, could make new friends, and generally got along with teachers. Plaintiff's mother also testified at the hearing that Plaintiff got along fine with his friends who came to visit him. The ALJ took note of Plaintiff's testimony that he did not have problems with his teachers since resuming his medication. (R. 18.)

After a careful review of the record the Court concludes that the ALJ's findings are supported by substantial evidence. A "marked" limitation in a domain means that the child's impairment is "more than moderate" but "less than extreme" and "interferes seriously with [their] ability to independently initiate, sustain, or complete activities."[27] The domain of interacting and relating with others addresses a child's ability to initiate and sustain emotional connections, develop and use the language of his community, cooperate with others, comply with rules, respond to criticism, and respect and take care of possessions of others.[28]

The ALJ properly noted that while Plaintiff had some degree of limitation in this domain the limitation was not marked. While the records relied upon by Plaintiff demonstrate some measure of limitation in Plaintiff's ability to interact and relate with others – as evidenced by the various disciplinary reports – these records do not show that the limitation rose to the "marked" level. Indeed, other than the disciplinary reports and the testimony of Plaintiff's mother, there is no other evidence suggesting that the limitations are marked. Notably, there are no teacher opinions or medical opinions in the record that the Plaintiff's behavior problems imposed "marked" limitations in Plaintiff's ability to interact and relate with others. Rather, there are compelling medical opinions and teacher opinions, which support the finding that Plaintiff's behavioral

---

[27] 20 C.F.R. § 416.926a(e)(2).

[28] 20 C.F.R. § 416.926a(v)(i).

problems imposed "less than marked" limitations in the domain of interacting and relating to others.

In addition, testimony from the Plaintiff and his mother also suggests that the limitations are less than marked. Both Plaintiff and his mother testified at the hearing that Plaintiff gets along with friends his own age and can make new friends. Further, in 2006 Plaintiff's mother stated that Plaintiff generally got along with his teachers. Plaintiff confirmed in his testimony at the January 2009 hearing that he got along with friends and teachers and that while he was on his medication he did not have problems with his teachers.

Moreover, during visits to the ADHD Clinic, there was no indication that Plaintiff had marked limitations in interacting and relating with others. The records from these visits generally referred to Plaintiff's impairment as well-controlled or fairly well-controlled with medication. Further, Plaintiff's records from his September 2006 and March 2007 visits to the ADHD Clinic disclose that Plaintiff was compliant and easily engaged in conversation.

The records from teachers also evidence that Plaintiff's limitation was less than marked. For example, in 2006, while two teachers commented that Plaintiff was disruptive, one of the teachers noted that Plaintiff worked well in small groups – a social skill which is inconsistent with an individual who has a marked limitation in the ability to interact and relate to others.

In sum, the record as a whole fully supports the view that Plaintiff has less than marked limitations in interacting and relating with others. Plaintiff is unable to point to

any opinion by a medical professional or teacher supporting the conclusion that his limitations in the area of interacting and relating to others rises to the level of "marked."

Accordingly, for these reasons, the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff has less than marked limitations in the domain of interacting and relating with others and, thus, because there was no evidence that Plaintiff had marked limitations in two domains, Plaintiff failed to demonstrate that his impairment medically equaled or functionally equaled the criteria for any listed impairment. As such, the substantial evidence on the record fully supports the ALJ's conclusion that the Plaintiff was not disabled.

## V. RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED.**

**IN CHAMBERS** at Gainesville, Florida, this 18th day of November, 2011.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**
**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

*Case No. 1:10-cv-186-MP-GRJ*